IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY McKINNEY, as Administrator<br>for the Estate of R. E., deceased,<br><br>     Plaintiff,<br><br>v.<br><br>FRANKLIN COUNTY, ILLINOIS,<br>RANDALL CROCKER, MICHAEL ABELL<br>SHAWN FREEMAN, DIANE SANDERS,<br>SAMANTHA THOMAS, DANIEL LYNCH,<br>ALICIA MENDOZA, ANTHONY BECHELLI,<br>CHC COMPANIES, INC. a/k/a CORRECTIONAL<br>HEALTHCARE COMPANIES, INC., CORRECT<br>CARE SOLUTIONS, LLC, LORI LITTLE, and<br>VIPIN SHAH, MD.,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Cause No:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Mary McKinney, as Administrator of the Estate of R. E., deceased, by and through her attorneys, Groves Powers, LLC, and for her Complaint against Defendants, Franklin County, Illinois, Randall Crocker, Michael Abell, Shawn Freeman, Diane Sanders, Samantha Thomas, Daniel Lynch, Alicia Mendoza, Anthony Bechelli, CHC Companies, Inc. a/k/a Correctional Healthcare Companies, Inc., Correct Care Solutions, LLC, Lori Little and Vipin Shah, M.D. states as follows:

### INTRODUCTION

1.  This is a civil rights action arising from Defendants' violation of R. E.'s (deceased minor) rights and liberties under the United States Constitution and brought pursuant to 42 U.S.C. §§ 1983 and 1988.  This is also an action for wrongful death brought pursuant to Illinois law.

## JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction over Plaintiff's claims arising under 28 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

3.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of Illinois because these state law claims are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this action because all events and omissions giving rise to Plaintiff's claims occurred in Franklin County, Illinois, a county entirely within the boundaries of the United States District Court, Southern District of Illinois.

## PARTIES

5.      Plaintiff MARY MCKINNEY is the duly appointed Administrator of the Estate of R. E., deceased, and brings this action pursuant to 42 U.S.C § 1983 and state law for the benefit of the surviving parent and sibling of Decedent, and any other person entitled to claim damages under the Civil Rights Act or Illinois law by reason of the death of R. E.

6.      Defendant FRANKLIN COUNTY, ILLINOIS ("Franklin County") was at all times relevant hereto a County of the State of Illinois, acting herein by its agents, servants and/or employees.

7.      Defendant RANDALL CROCKER ("Crocker") was at all times relevant hereto acting as the Chairman of the Franklin County Board and as an agent, servant and/or employee of

defendant Franklin County.  Defendant Crocker is sued in his individual capacity and official capacity as Chairman of the Franklin County Board.

8.     Defendant MICHAEL ABELL ("Abell") was at all times relevant hereto duly-appointed and acting as the Director of Court Services for Franklin County and as an agent, servant and/or employee of defendant Franklin County.  At all times relevant hereto, defendant Abell was acting within the course and scope of his agency and/or employment.  Defendant Abell is sued in his individual capacity and official capacity as Director of Court Services for Franklin County.

9.     Defendant SHAWN FREEMAN ("Freeman") was at all times relevant hereto duly-appointed and acting as the Superintendent of the Franklin County Juvenile Detention Center and as an agent, servant and/or employee of defendant Franklin County.  At all times relevant hereto, defendant Freeman was acting within the course and scope of his agency and employment.  Defendant Freeman is sued in his individual capacity and official capacity as an agent, servant and/or employee of defendant Franklin County.

10.     Defendant DIANE SANDERS ("Sanders") was at all times relevant hereto duly-appointed and acting as the Assistant Superintendent of the Franklin County Juvenile Detention Center and as an agent, servant and/or employee of defendant Franklin County.  At all times relevant hereto, defendant Sanders was acting within the course and scope of her agency and employment.  Defendant Sanders is sued in her individual capacity and official capacity as an agent, servant and/or employee of defendant Franklin County.

11.     Defendant SAMANTHA THOMAS ("Thomas") was at all times relevant hereto acting as the Shift Supervisor of the Franklin County Juvenile Detention Center and as an agent, servant and/or employee of defendant Franklin County.  At all times relevant hereto, defendant Thomas was acting with the course and scope of her employment.  Defendant Thomas is sued in

3

her individual and official capacities as an agent, servant and/or employee of Defendant Franklin County.

12.     Defendants DANIEL LYNCH ("Lynch"), ALICIA MENDOZA ("Mendoza") and ANTHONY BECHELLI ("Bechelli") were at all times relevant hereto Juvenile Detention Officers of the Franklin County Juvenile Detention Center and agents, servants and/or employees of defendant Franklin County.  At all times relevant hereto, defendants Lynch, Mendoza and Bechelli were acting within the course and scope of their employment.  Defendants Lynch, Mendoza and Bechelli are sued in their individual and official capacities as an agent servant and/or employee of Defendant Franklin County.

13.     Defendant CHC COMPAINES, INC. a/k/a CORRECTIONAL HEALTHCARE COMPANIES, INC. ("CHC") was at all times relevant hereto a for-profit Delaware Corporation with its principal place of business in Centennial, Colorado.   Defendant CHC was doing business in Franklin County, Illinois specifically as a healthcare service provider at the Franklin County Juvenile Justice Center.

14.     Defendant CORRECT CARE SOLUTIONS, LLC ("Correct Care") was at all times relevant hereto a for-profit Corporation with its principal place of business in Nashville, Tennessee.  Upon information and belief, defendant Correct Care purchased CHC in July, 2014.

15.     Defendant LORI LITTLE ("Little") was at all times relevant hereto a licensed nurse and employee of defendant CHC and/or defendant Correct Care.

16.     Defendant VIPIN SHAH, M.D. ("Dr. Shah") was at all times relevant hereto a medical doctor and employee, agent and/or servant of defendant CHC and/or defendant Correct Care.

## FACTUAL ALLEGATIONS

17.     That Plaintiff's decedent, R. E., ("Decedent") was a detainee in the custody, control and care of Defendants at the Franklin County Juvenile Detention Center between September 17, 2014 and September 23, 2014.   That, at the time of his detention at Franklin County Juvenile Detention Center, Decedent was a minor, age 12 years old.

18.     That at all times relevant hereto, defendant Franklin County owned, maintained and controlled the Franklin County Juvenile Justice Center and, together with Defendants Abell, Freeman and Sanders, supervised and/or controlled its employees and detainees.

19.     That all times relevant hereto, Defendants had a special relationship with Decedent arising from the fact that Defendants had custody and care of Decedent pursuant to state law under circumstances which deprived him of his normal opportunities for protection.

20.     That at all times relevant hereto, Decedent had serious medical needs and/or was at substantial risk of suicide or self-harm and Defendants knew of such serious medical needs and/or substantial risk of suicide or self-harm.   Decedent had been previously admitted and assessed at the Franklin County Juvenile Detention Center and Defendants knew that he had a documented history of psychological problems, including but not limited to past expressions of suicidal thoughts, depression, low mood and depression associated with his mother's death and a family history of suicide.

21.     That upon information and belief, Franklin County Juvenile Detention Center contracted with defendant CHC and/or defendant Correct Care to provide physical and mental healthcare to detainees at the Franklin County Juvenile Detention Center, which care and services

5

included intake assessments and continued medical care and monitoring of detainees' medical and mental health conditions.

22.     That defendant Little was employed by defendant CHC and had been working at as a nurse for Franklin County Juvenile Detention Center for approximately seven years at the time of Decedent's detention in September 2014.

23.     That on or about September 18, 2014, defendant Little conducted an intake health assessment for Decedent and, despite Decedent's known history of psychological problems and then existing serious medical needs and substantial risk of suicide or self-harm, allowed him to continue to be detained and held in the detention center's "general population" cells.

24.     That on or about September 22, 2014, defendant Dr. Shah reviewed and approved the intake assessment, and upon information and belief did so without adequately reviewing Decedent's medical history or conducting his own evaluation.

25.     That detainees at the Franklin County Juvenile Detention Center are housed in cell "pods" which consist of individual cells. That Pod "A" contains eight single occupancy cells, each of which has a metal door with a narrow window measuring approximately 4 inches wide. That, although the exterior area of Pod A is equipped with video-surveillance cameras, the interior of the individual cells are not monitored by video-surveillance.

26.     That between September 17, 2014 and September 23, 2014, Defendants housed Decedent in Pod "A," in a single occupancy cell behind a steel door. That the conditions in the cell in which Decedent was housed were unsafe and unreasonably dangerous to him and other detainees in that the cell was isolated and unmonitored by video-surveillance cameras and contained a stainless steel sink/toilet combination with a handrail running toward and bolted to the wall of the cell.

6

27.     That upon information and belief, Franklin County Juvenile Detention Center's formal policies require that each detainee be checked on at intervals of no more than fifteen minutes for the purpose of monitoring detainee safety.

28.     That on September 23, 2014, defendant Thomas was acting as Shift Supervisor at the Franklin County Juvenile Detention Center for the 3:00 p.m. to 11:00 p.m. shift.  Defendant Thomas was responsible for supervising and controlling the Juvenile Detention Officers on duty during that shift, including defendants Lynch, Mendoza and Bechelli and was further responsible for the supervision, monitoring and care of detainees, including Decedent.  As such, defendant Thomas was acting under the color of state law.

29.     That on the afternoon of September 23, 2014 between the hours of 3:00 p.m. and 11:00 p.m., defendants Lynch, Mendoza and Bechelli were the Juvenile Detention Officers assigned to monitor detainees, including Decedent, and as such, were acting under the color of state law.

30.     That on the afternoon of September 23, 2014, defendants Thomas, Lynch, Mendoza and Bechelli failed to check on Decedent in accordance with Franklin County Juvenile Detention Center's stated policy.

31.     That on September 23, 2014, while alone and unsupervised in his cell, Decedent strangled and/or hung himself by fashioning a bedsheet into a rope and securing it to the handrail connected to the railing on the sink/toilet combination in his cell.

32.     That as a direct result of the defendants Thomas, Lynch, Mendoza and Bechelli failure to monitor Decedent, Decedent was left in his cell undiscovered for a presently undetermined amount of time.

33.    That after Decedent was discovered, he was taken to the hospital where he was pronounced dead.

## COUNT I

**Violation of Civil Rights (42 U.S.C. § 1983) Against Defendants Franklin County, Crocker, Abell, Freeman, Sanders, Thomas, Lynch, Mendoza and Bechelli**

34.    Plaintiff repleads, realleges, and incorporates by reference all the allegations contained in paragraphs 1 through 33.

35.    Plaintiff brings Count I of this cause of action against Defendants pursuant to 42 U.S.C. § 1983 for damages for Defendants' deprivation of Decedent's constitutionally protected rights by reason of Defendants' violation of Decedent's substantive and due process rights pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America.

36.    That defendant Franklin County owned, maintained and operated the Franklin County Juvenile Justice Center for the purpose of housing juvenile detainees, and as such, was acting under the color of state law.

37.    That defendant Crocker possessed policymaking authority at the Franklin County Juvenile Detention Center, including but not limited to the authority to furnish suitable rooms, accommodations and equipment and otherwise provide for the care and safety of minors detained at the Franklin County Juvenile Detention Center.  At all times relevant hereto, defendant Crocker was acting under the color of state law.

38.    That at all times relevant hereto, defendants Abell, Freeman and Sanders possessed supervisory and policymaking authority for the Franklin County Juvenile Detention Center, including but not limited to the authority to hire, fire, train, supervise and discipline employees of the Franklin County Juvenile Detention Center and to create and enforce policies and procedures

8

to provide for the safety of detained minors. At all times relevant hereto, defendants Abell, Freeman and Sanders were acting under the color of state law.

39.     Decedent had a clearly established constitutional right to have his serious medical needs addressed and to be protected from self-harm.

40.     Defendants, and each of them, knew of Decedent's serious medical needs, including his serious, imminent and substantial risk of self-harm and suicide, and his need for screening, monitoring and assistance, but willfully and recklessly failed to respond reasonably to these known risks and needs. Defendants, acting alone and in concert, were deliberately indifferent to Decedent's serious medical needs and substantial risk of harm in that Defendants:

    a.   failed to provide necessary treatment and/or therapy for Decedent's condition, including depression and substantial risk of suicide;

    b.   failed to investigate Decedent's known depressive condition and/or substantial risk of suicide enough to make an informed judgment about his medical needs;

    c.   made medical decisions about Decedent's treatment and/or therapy based on non-medical factors, such as budgetary constraints and lack of staff;

    d.   delayed and/or interfered with Decedent's access to treatment and/or therapy for his mental conditions and substantial risk of suicide;

    e.   failed to take reasonable measures to abate the known risk of Decedent's suicide;

    f.   directed, caused and allowed Decedent to be housed in and remain unmonitored and unsupervised in a cell which was unsafe and contained dangerous items, including bedsheets and railing which Defendants knew could be used by a detainee to hang himself;

    g.   failed to placed Decedent on suicide watch or adequately monitor his condition and behavior; and/or

    h.   otherwise intentionally or recklessly disregarded Decedent's right to adequate medical care and protection from self-harm.

41.     Further, that while Decedent was under the custody, care and control of Franklin County Juvenile Detention Center, defendants Crocker, Abell, Freeman and Sanders, having

supervisory capacities and policymaking authority, maintained unconstitutional policies and had unconstitutional procedures and or customs, practices and usages that were so widespread as to constitute the policy of the Franklin County Juvenile Detention Center which they knew placed detainees' at risk of self-harm, in that Defendants:

a. failed to train detention center staff in suicide prevention, identification and monitoring of at-risk detainees;

b. caused detainees to be housed in unsafe cells and in unsafe conditions without adequate monitoring;

c. maintained inadequate suicide prevention, intake and monitoring policies and procedures which failed to identify and/or monitor at-risk detainees;

d. maintained an inadequate monitoring systems of detainees;

e. failed to enforce intake, monitoring and other suicide prevention policies and procedures, and caused, permitted and allowed a custom and practice of continued and persistent deviation from those policies and procedures;

f. employed, directly and/or by contract, poorly trained and unqualified persons to evaluate and provide care and monitoring to detainees for serious medical needs, including suicide risk; and/or

g. were otherwise deliberately indifferent to or tacitly authorized acts of their subordinates that violated at-risk detainees and Decedent's constitutional rights.

42.     That as a direct and proximate result of Defendants' constitutional violations set forth above, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's serious medical needs and known and obvious risk of self-harm was ignored, unmonitored, untreated and/or unidentified, and Decedent was permitted to remain in his cell with dangerous items which enabled him to hang himself and commit suicide.

43.     Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, were deliberately indifferent to

Decedent's known serious medical needs and substantial risk of suicide, and deprived him of his right to be free from punishment and to due process of law as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

44.     As a direct and proximate result of Defendants' constitutional violations, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent died on September 23, 2014.

45.     As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's mental condition deteriorated and Decent endured conscious pain and suffering from the time he was detained by Defendants until his death.

46.     As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent and Decedent's heirs have suffered pecuniary losses, including but not limited to the costs of Decedent's medical care and expenses associated with Decedent's funeral.

47.     As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's heirs were caused to suffer loss of services, companionship, comfort, instruction, guidance, counsel and support because of Decedent's death.

48.     Further, the constitutional violations of Defendants, and each of them, as described above, were outrageous because of their conscious disregard and reckless indifference to the rights of Decedent, thereby warranting an award of punitive and exemplary damages against each individually named Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment on Count I in favor of Plaintiff and against Defendants, awarding compensatory and non-economic damages in a reasonable amount to be determined by the jury; punitive and exemplary damages against Defendants Crocker, Abell, Freeman, Sanders, Thomas, Lynch, Mendoza and Bechelli in their individual capacities in an amount sufficient to punish and deter Defendants and others from like conduct; reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. §§ 1988; and for such further and other relief as the Court deems just and proper, together with costs and interest.

## COUNT II

### Violation of Civil Rights (42 U.S.C. § 1983) Against Defendants CHC and/or Defendant Correct Care

49.    Plaintiff repleads, realleges and incorporates by reference all the allegations contained in paragraphs 1 through 48.

50.    Plaintiff brings Count II of this cause of action against Defendants pursuant to 42 U.S.C. § 1983 for damages for Defendants' deprivation of Decedent's constitutionally protected rights by reason of Defendants' violation of Decedent's substantive and due proves rights pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America.

51.    At all times relevant hereto, defendant CHC and/or defendant Correct Care were engaged in the business for profit of providing medical and psychological services to detainees and inmates of the Franklin County Juvenile Justice Center, including initial and continuing suicide risk evaluation, and had specifically contracted with defendant Franklin County and/or the Franklin County Juvenile Detention Center to provide such services, and as such, were acting under the color of state Law.

52.    At all times relevant hereto, while Decedent was under the custody, care and control of the Franklin County Juvenile Detention Center, Defendants committed one or more of the

12

following acts of deliberate indifference and conscious disregard of Decedent's constitutional rights:

    a.  had in place policies and procedures which were not reasonably calculated to determine whether detainees at the Franklin County Juvenile Detention Center were in need of serious medical care or at substantial risk of suicide;

    b.  had in place policies and procedures which deprived juvenile detainees of adequate and timely access to necessary medical care;

    c.  failed to train and supervise its employees and agents to adequately assess detainees' serious medical needs and/or risk of suicide;

    d.  assigned poorly trained and unqualified personnel to evaluate and provide care to detainees; and/or

    e.  were otherwise deliberately indifferent to or tacitly authorized acts of their employees, agents and servants that violated at-risk detainees' and Decedent's constitutional rights.

53.    That as a direct and proximate result of Defendants' constitutional violations set forth above, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's serious medical needs and known risk of self-harm was ignored, unmonitored, untreated and/or unidentified, and Decedent was permitted to remain in his cell with dangerous items which enabled him to hang himself and commit suicide.

54.    Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, were deliberately indifferent to Decedent's known serious medical needs and substantial risk of suicide, and deprived him of his right to be free from punishment and to due process of law as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

55.     As a direct and proximate result of Defendants' constitutional violations, and as a direct and proximate result of Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent died on September 23, 2014.

56.     As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's mental condition deteriorated and Decent endured conscious pain and suffering from the time he was detained by Defendants until his death.

57.     As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent and Decedent's heirs have suffered pecuniary losses, including but not limited to the costs of Decedent's medical care and expenses associated with Decedent's funeral.

58.     As a direct and proximate result of Defendants' constitutional violations and Defendants' unconstitutional policies, customs and procedures, combining, concurring and contributing, Decedent's beneficiaries were caused to suffer loss of services, companionship, comfort, instruction, guidance, counsel and support because of Decedent's death.

59.     Further, the constitutional violations of Defendants, and each of them, as described above, were outrageous because of their conscious disregard and reckless indifference to the rights of Decedent, thereby warranting an award of punitive and exemplary damages against Defendants.

WHEREFORE, Plaintiff prays the Court enter judgment on Count II in favor of Plaintiff and against Defendants, awarding compensatory and non-economic damages in a reasonable amount to be determined by the jury; punitive and exemplary damages against Defendants in an amount sufficient to punish and deter Defendants and others from like conduct; reasonable

attorneys' fees and cost incurred in this action pursuant to 42 U.S.C. §§ 1988; and for such further and other relief as the Court deems just and proper, together with costs and interest.

**Count III**

**Violation of Civil Rights (42 U.S.C. § 1983) Against Defendant Little**

60.     Plaintiff repleads, realleges and incorporates by reference all the allegations contained in paragraphs 1 through 59.

61.     Plaintiff brings Count III of this cause of action against defendant Little pursuant to 42 U.S.C. § 1983 for damages for Defendant's deprivation of Decedent's constitutionally protected rights by reason of Defendant's violation of Decedent's substantive and due process rights pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America.

62.     On September 17 through September 23, 2014, and at all times relevant hereto, defendant Little, was a duly licensed nurse, employed and acting at all times as the agent for defendant CHC and/or defendant Correct Care, and was engaged in the practice of providing nursing care, including intake psychiatric evaluation of detainees of the Franklin County Juvenile Justice Center and was therefore acting under the color of state law.

63.     On or about September 18, 2014, Decedent came under the care of defendant Little, in part, for the purpose of evaluating his physical and mental condition and evaluation his risk of committing suicide; and that at the time of the evaluation, Decedent presented with serious medical needs and/or was at a substantial risk of suicide.

64.     Defendant Little was aware of Decedent's serious medical needs and/or substantial risk of suicide and despite that knowledge, acted with deliberate indifference to said medical needs and risk by:

    a.   failing to accurately assess Decedent's risk of suicide;

    b.   failing to have Decedent's condition adequately addressed by referral to appropriate mental health professionals;

    c.   failing to adequately assess or obtain a necessary mental health assessment;

    d.   causing and allowing Decedent to be detained in an unsafe, inadequately supervised and physically isolated cell;

    e.   failing to accurately or completely document Decedent's condition;

    f.   failing to monitor Decedent for changes in his condition while he was detained; and/or

    g.   failing to otherwise act to protect Decedent from a known risk of self-harm.

65.    That as a direct and proximate result of Defendant's constitutional violations set forth above, combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent's serious medical needs and known risk of self-harm was ignored, unmonitored, untreated and/or unidentified, and Decedent was permitted to remain in his cell with dangerous items and enabled him to hang himself and commit suicide.

66.    Defendant's constitutional violations were deliberately indifferent to Decedent's known serious medical needs and substantial risk of suicide, and deprived him of his right to be free from punishment and to due process of law as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

67.    As a direct and proximate result of Defendant's constitutional violations, combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent died on September 23, 2014.

68.    As a direct and proximate result of Defendant's constitutional violations combining, concurring and contributing with the constitutional violations of the other Defendants

named herein, Decedent's mental condition deteriorated and Decent endured conscious pain and suffering from the time he was detained by Defendants until his death.

69.     As a direct and proximate result of Defendant's constitutional violations, combining, concurring, and contributing with the constitutional violations of the other Defendants named herein, Decedent's heirs have suffered pecuniary losses, including but not limited to the costs of Decedent's medical care and expenses associated with Decedent's funeral.

70.     As a direct and proximate result of Defendants' constitutional violations, combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent's beneficiaries were caused to suffer loss of services, companionship, comfort, instruction, guidance, counsel and support because of Decedent's death.

71.     Further, the constitutional violations of Defendant, as described above, were outrageous because of her conscious disregard and reckless indifference to the rights of Decedent, thereby warranting an award of punitive and exemplary damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment on Count III in favor of Plaintiff and against Defendant, awarding compensatory and non-economic damages in a reasonable amount to be determined by the jury; punitive and exemplary damages against Defendant in an amount sufficient to punish and deter Defendant and others from like conduct; reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. §§ 1988; and for such further and other relief as the Court deems just and proper, together with costs and interest.

## COUNT IV

### Violation of Civil Rights (42 U.S.C. § 1983) Against Defendant Vipin Shah, M.D.

72.     Plaintiff repleads, realleges and incorporates by reference all the allegations contained in paragraphs 1 through 71.

73.     Plaintiff brings Count IV of this cause of action against defendant Dr. Shah pursuant to 42 U.S.C. § 1983 for damages for Defendant's deprivation of Decedent's constitutionally protected rights by reason of Defendant's violation of Decedent's substantive and due process rights pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America.

74.     At all times relevant hereto, defendant Dr. Shah was a licensed medical doctor, holding himself out to the general public as an expert in psychiatry, and was at all relevant times acting as an agent, servant and/or employee of defendant CHC and/or defendant Correct Care and providing medical and mental health services to detainees at the Franklin County Juvenile Detention Center, and therefore acting under the color of state law.

75.     That on September 22, 2014, Dr. Shah approved the intake assessment and patient plan prepared by defendant Little on September 18, 2014.

76.     That at the time of evaluation of Decedent, Decedent presented with a serious medical need and/or substantial risk of suicide.

77.     That defendant Shah was aware of Decedent's serious medical needs and/or substantial risk of suicide and despite that knowledge, acted with deliberate indifference to said medical needs and risk by:

      a.  failing to accurately assess Decedent's risk of suicide;

      b.  failing to research or determine Decedent's prior medical/psychiatric history before approving Decedent's continued detention in the "general population" at the Franklin County Juvenile Detention Center;

      c.  failing to perform any examination of Decedent or alternatively, failing to perform an adequate mental health evaluation or examination before approving the intake assessment and plan;

      d.  causing or allowing Decedent to be detained in an unsafe, inadequately supervised and physically isolated cell;

e.   failing to monitor Decedent for changes in his condition while he was detained; and/or

f.   failing to otherwise act to protect Decedent from a known risk of self-harm.

78.   As a direct and proximate result of Defendant's constitutional violations, combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent died on September 23, 2014.

79.   As a direct and proximate result of Defendant's constitutional violations combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent's mental condition deteriorated and Decent endured conscious pain and suffering from the time he was detained by Defendants until his death.

80.   As a direct and proximate result of Defendant's constitutional violations, combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent's heirs have suffered pecuniary losses, including but not limited to the costs of Decedent's medical care and expenses associated with Decedent's funeral.

81.   As a direct and proximate result of Defendant's constitutional violations, combining, concurring and contributing with the constitutional violations of the other Defendants named herein, Decedent's beneficiaries were caused to suffer loss of services, companionship, comfort, instruction, guidance, counsel and support because of Decedent's death.

82.   Further, the constitutional violations of Defendant, as described above, were outrageous because of his conscious disregard and reckless indifference to the rights of Decedent, thereby warranting an award of punitive and exemplary damages against Defendant.

WHEREFORE, Plaintiff prays the Court enter judgment on Count IV in favor of Plaintiff and against Defendant Shah, awarding compensatory and non-economic damages in a reasonable

amount to be determined by the jury; punitive and exemplary damages against Defendant in an amount sufficient to punish and deter Defendant and others from like conduct; reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. §§ 1988; and for such further and other relief as the Court deems just and proper, together with costs and interest.

**Count V**
**(Wrongful Death – Survivorship)**

83.    Plaintiff repleads, realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 82.

84.    Plaintiff brings Count V as Administrator of the Estate of R. E., deceased, and pursuant to the common law, 740 ILCS 180/1, et seq., for the benefit of Decedent's statutory beneficiaries and, pursuant to 755 ILCS 5/27-6, for injuries and damages to Decedent.

85.    This Count is pled against all Defendants, individually, collectively and under the theory of *respondeat superior*, where applicable, who had a duty to use reasonable care for the protection of Decedent, as well as to not act willfully and wantonly, with conscious disregard or recklessly with regard to the safety of Decedent.

86.    That Decedent's injuries and subsequent death directly and proximately resulted from the willful and wanton, reckless, consciously indifferent, intentional and negligent acts and/or omissions of Defendants, individually, collectively and in their capacities as employers, employees, officers and/or agents, as set forth above.

87.    As a direct and proximate cause of the aforementioned conduct and/or negligence per se of the Defendants, Decedent was caused to suffer serious personal injuries and his untimely death. Decedent also sustained conscious pain and suffering of mind and body, fear of impending death and loss of the enjoyment of life. Decedent's heirs have incurred medical bills, funeral expenses and burial expenses. Decedent's heirs will also sustain a loss of financial support and/or

financial contributions from the Decedent, the loss of the services of Decedent, the loss of medical benefits and/or fringe benefits that they would have normally been entitled to, as well as the loss of the care, comfort, counsel, training, society, protection, attention, companionship, guidance, love, education and/or experience that Decedent provided, or would have provided, to the family, all to their damage. They have also sustained serious mental anguish, grief and loss of companionship. All said damages are permanent, progressive and/or will continue to increase in the future.

WHEREFORE, Plaintiff prays the Court enter judgment on Count V in favor of Plaintiff and against Defendants, awarding compensatory and non-economic damages in a reasonable amount to be determined by the jury; punitive and exemplary damages against Defendants in an amount sufficient to punish and deter Defendants and others from like conduct; and such further and other relief as the Court deems just and proper, together with costs and interest.

### JURY TRIAL DEMANDED

Respectfully submitted,

GROVES POWERS, LLC

/s/ Steven L. Groves
LINDA C. POWERS #6271689
STEVEN L. GROVES, #6211737
1310 Papin Street, Suite 108
St. Louis, MO 63103
(314) 696-2300 (p)
(314) 696-2304 (f)
lpowers@grovespowers.com
sgroves@grovespowers.com

Attorneys for Plaintiff

21