IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARY MCKINNEY, AS ADMINISTRATOR FOR THE ESTATE OF R.E., DECEASED, | ) ) ) ) |
| Plaintiff, | ) Case No. 15-CV-1044-SMY-RJD |
| vs. | ) ) ) |
| FRANKLIN COUNTY, ILLINOIS, et al., | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Mary McKinney, Administrator of R.E.'s Estate filed this action against Franklin County, Illinois and various individuals, asserting violations of 42 U.S.C § 1983 and state law claims for wrongful death, *respondeat superior,* and indemnification. Now before the Court are Defendants' Motion to Bar Plaintiff's Expert Opinions (Doc. 149) and Plaintiff's Motion to Bar Defendants' Expert (Doc. 153). The parties have filed responses (Docs. 161 and 162). For the following reasons, the motions are **DENIED**.

## Legal Standard

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. As the gatekeeper of expert testimony, it is the Court's responsibility to assure that the proposed testimony is reliable; that is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v.*

*Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). With respect to an expert proffered for his experience, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

Equally important to the gate-keeping function is the Court's determination as to whether the proposed testimony is relevant. *Daubert,* 509 U.S. at 591. Thus, even if an expert's testimony is deemed reliable, under Rule 702, it must be excluded if it is not relevant, which means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue...." *United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir.1996); *see also United States v. Gallardo,* 497 F.3d 727, 733 (7th Cir. 2007). "The suggested ... testimony must 'fit' the issue to which the expert is testifying" and should help the trier of fact decide the case at bar. *See Chapman v. Maytag Corp.,* 297 F.3d 682, 687 (7th Cir. 2002).

"A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."" *Id.* (quoting *Daubert*, 509 U.S. at 596).

**Discussion**

**Defendants' Motion to Bar Plaintiffs' Experts (Doc. 149)**

Defendants seek to exclude the testimony and opinions offered by Plaintiff's experts Dr. Tyler Kress, Dr. Richard Cummins, and Lindsay Hayes. Defendants first argue that because Plaintiff's experts are not psychologists, they are not qualified to offer any opinions in this case. Defendants further argue that Plaintiff's experts' opinions are not relevant because they will not assist the jury in deciding "the sole relevant question" of whether any defendant was deliberately indifferent to a known risk that R.E. would imminently take his own life.

*Dr. Tyler Kress*

Dr. Tyler Kress is an engineer with experience in safety, human factors, accident reconstruction, and injury prevention. He holds a B.S., M.S., and Ph.D. with major concentrations in Engineering Science & Mechanical/Biomedical Engineering and Industrial Engineering. Dr. Kress has taught engineering and safety courses at the university and graduate levels for over 30 years.

Dr. Kress offers the opinion that Center employees failed to conduct adequate watch tours in violation of policies and procedures. Specifically:

> My evaluation determined that during watch tours [Center] personnel were customarily, and with regularity, not looking into each room such that they were adequately ensuring that they see living, breathing youth before continuing on. The nature of how they walked by and pushed the electronic buttons in order to testify and document that they visually performed this duty was insufficient. By virtue of how they were walking by and performing the task, and the deficiencies of their visual capabilities with respect to the constraints in this environment, indicated that many of the personnel (or officers) during multiple watch tours would certainly not be able to reasonably discern the safety and security of youth in each room. This was apparently an accepted insufficient, and drastically subpar, practice at the [Center]... The safety culture at the [Center] was woefully inadequate in that their custom and practice was to allow personnel conducting watch tours to do them inadequately, specifically fail to properly verify the safety status of the youth; management accepted repeated violations of their vital policy that the tours be

conducted every 15 minutes. This is the type of practice that leads to known hazards that are supposed to avoided, prevented and/or minimized, to manifest themselves…

In reaching his opinions, Dr. Kress reviewed case-specific materials, including Center policy and procedure manuals, training materials, video surveillance, and the depositions of Center employees. He also conducted a site inspection at the Center during which he examined the control room area of the pods, the layout and configuration of each individual cell within the pod, the dimensions and placements of the cell door windows and R.E.'s cell. He took numerous measurements, collected 3-D dimensional laser scanning data of the pod and R.E.'s room, and took numerous photographs and videos.

Defendants do not challenge Dr. Kress's qualifications, methodology or the substance of his opinions. Rather, they argue that his opinions are irrelevant because the only relevant question in this case is whether any defendant disregarded a known risk that R.E. was on the verge of imminently committing suicide. While the defendants' knowledge with respect to the risk of R.E.'s suicide is an issue, it is not the "sole relevant question" in this case. Plaintiff also claims that the defendants maintained unconstitutional policies, procedures and widespread practices in terms of Center policies and procedures. The Court finds that Dr. Kress's opinions are relevant to those claims. Dr. Kress is qualified to render his opinions and his methodology is sound. Accordingly, Defendants' Motion is denied as to the opinions of Dr. Kress.

### *Dr. Richard Cummins*

Dr. Cummins is a licensed and practicing physician who is board certified in Internal Medicine and Emergency Medicine. Dr. Cummins works full-time clinically as an emergency medicine physician providing clinical care and supervising medical students and emergency medicine and non-emergency residents in training as well as providing direct patient care himself.

He has authored or co-authored and published over 150 medical articles, abstracts and book chapters on emergency cardiac care, cardiac arrest, resuscitation and related topics.

Dr. Cummins has reviewed records, data, video, depositions and other pertinent information related to this case and opines that R.E.'s death was "unnecessary and preventable" and that "staff at the Franklin County Juvenile Detention Center violated critical procedures that should have been followed by prudent Detention Center professionals" regarding suicide prevention in the following ways:

1. They failed to properly screen R. E. for suicide risk. He was not medically assessed during intake and was not "classified" as to suicide risk.

2. They failed to recognize that R.E. was a child at risk for suicide due to their failure to properly screen him at intake, and their failure to medically assess him after his admission.

3. They failed to place him under suicide risk precautions.

4. They failed to properly execute their established "watch tour" policy of watch checks every 15 minutes or less. The major purpose of this "watch tour" policy was to prevent self-harm and suicide. A watch check executed 15 minutes or less after R.E. initiated his suicide attempt, would have, on a more likely than not basis, resulted in a successful rescue, and the prevention of permanent brain damage or death (assuming the Detention Center's local emergency medical response met the standard of care).

5. They failed to properly execute a local emergency medical response in terms of early CPR, and early application and operation of an AED.

As an emergency room physician, Dr. Cummins has the requisite background and experience to render opinions regarding the circumstances and final mechanism of R.E.'s death. Further, his opinions are relevant and will assist the jury with its analysis of Plaintiff's wrongful death claim and claim that Defendants maintained widespread customs and practices that violated R.E.'s constitutional rights. Accordingly, Defendants' Motion is denied as to Dr. Cummins.

*Lindsay Hayes*

Lindsay Hayes is an expert in the field of suicide prevention within jails, prison, and juvenile facilities. Hayes has served as a suicide prevention consultant to the U.S. Justice Department's Civil Rights Division (Special Litigation Section) and other government agencies in their investigations of conditions of confinement in both adult and juvenile correctional facilities throughout the country. Hayes has conducted the only five national studies of jail, prison, and juvenile suicide and has authored over 70 publications in the area of suicide prevention in correctional facilities. Plaintiff has retained Hayes to offer opinions as to whether, through policy and practice, the conduct of Franklin County and Center administrators and staff was consistent with the standard of care and standard juvenile detention practices, and whether such conduct was a proximate cause of R.E.'s suicide.

Hayes is qualified to render opinions in this case and his opinions are relevant to Plaintiff's deliberate indifference claims, wrongful death and § 1983 claim *Monell* claims. Accordingly, Defendants' Motion is denied.

**Plaintiff's Motion to Bar Defendants' Expert Witness (Doc. 153)**

Plaintiff moves to exclude Dr. Sharon Coleman's opinions on the bases that Dr. Coleman is unqualified, her opinions are improper, and her proposed testimony is comprised of inadmissible legal conclusions. Specifically, Plaintiff argues that Dr. Coleman may not testify regarding the defendants' subjective knowledge or the reasonableness of their actions because such testimony invades the province of the jury to determine this case.

Dr. Coleman is a licensed clinical psychologist employed by the Illinois Department of Human Services as the Associate Director for Forensic Services. Dr. Coleman reviewed information in the record including depositions, responses to interrogatories, intake screening

forms, incident reports and other materials produced in discovery. She opines that (a) no facts of which any defendant was aware of were sufficient for him or her to infer that there was a significant likelihood that R.E. would imminently take his own life, and that (b) no Defendant failed to take reasonable steps to prevent R.E. from taking his own life.

Dr. Coleman is a licensed psychologist who has experience evaluating and assessing suicide risk and is therefore qualified to render her opinions. In determining whether Dr. Coleman's opinions are reliable, the focus is on her methodology, "not the factual underpinnings or the substance of [her] conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718, 719 (7th Cir. 2000). The Court finds that Dr. Coleman supports her conclusions based on her review of the record and her experience and that her opinions are relevant to the issue of whether Defendants had the requisite knowledge to support a finding of deliberate indifference. Accordingly, Plaintiff's Motion is denied.

**IT IS SO ORDERED.**

**DATED: February 8, 2019**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**